## MASSET v. BALDWIN PIANO CO.
### No. 6011.

Court of Appeal of Louisiana, Second
Circuit.

April 4, 1940.

On Rehearing Nov. 29, 1940.

Jackson & Mayer, of Shreveport, for
appellant.

I. E. Uzzo, of New Orleans, and Isaac
Abramson, of Shreveport, for appellee.

HAMITER, Judge.

Under a written contract of date May 10, 1929, plaintiff, John F. Masset, agreed with the defendant, a corporation maintaining general offices in Cincinnati, Ohio, and St. Louis, Missouri, to receive musical instruments from the latter on a consignment basis and to dispose of them by sale. The parties contemplated that his operations would be conducted in and near the City of Baton Rouge, Louisiana.

The written agreement provided in part that:

"The undersigned (plaintiff) will be allowed as commission the difference between the price at which the instruments are sold and the price of the instruments to the undersigned, and prices are subject to change on notice. On all cash sales the undersigned shall immediately remit to you (defendant) in cash for the instrument sold as per agreed prices and terms furnished by you. On time sales, the undersigned will send you the proceeds of the same, including notes, mortgages, contracts or leases, retaining the cash payment, provided this does not exceed the commission; the balance of the commission to be credited the undersigned as received by you from the customer in proportion. (Undersigned is to retain the first four monthly payments and then share in balance of payments proportionately.)"

A letter addressed by defendant to plaintiff under date of January 29, 1930, evidenced the termination of their agency relationship and stated:

"This letter will confirm cancellation of your agency agreement as of January 25th and in accordance with Mr. Youse's conversation with you at that time. It being understood that the provisions of consignment contract dated May 10th, 1929 and any other contracts pertaining to John F. Masset or the Baton Rouge Piano Company are to remain in force and effect as far as outstanding accounts made in accordance therewith are concerned."

Numerous sales of pianos and other instruments were made by plaintiff in his representative capacity, most of which were on the installment basis. As the notes and purchase agreements were received he forwarded them to his principal. When his contract came to an end there were approximately 28 outstanding and unpaid accounts involving piano sales, from which

plaintiff was entitled to a gross contingent commission of $3,594.86. In other words, that amount represented the gross commission to which he would be entitled upon full satisfaction of the purchase obligations.

On December 4, 1934, suit No. 65,470, on the docket of the District Court of Caddo Parish, was instituted by plaintiff to recover the net commissions due from the mentioned transactions, allegedly in the sum of $3,103.75. That proceeding will be referred to hereinafter as the former suit. The judgment rendered therein was in his favor for $491.98, and decreed "that the demands of the plaintiff, John F. Masset, in excess of the foregoing sum be and they are hereby dismissed as of nonsuit, with reservation of the plaintiff's right to sue for an accounting, and without prejudice by the judgment herein." On appeal to the Supreme Court the judgment was affirmed. 186 La. 356, 172 So. 418.

The instant suit was commenced on February 19, 1937. It involves the same contract and has for its purpose the recovery of commissions due and owing thereunder. Plaintiff prays for judgment against defendant "for such sums of money and interest as a full and complete accounting by the defendant may disclose that your petitioner is entitled to have." He further prays that in the event defendant fails to render a full and complete accounting he have judgment for $2,136.51, with interest, "being the amount which your petitioner alleges and believes to be due him by the defendant." The petition alleges total gross commissions of $3,594.86, subject to a credit of $491.98, being the amount of the judgment of the former suit, and a further credit of $966.37, which is a sum judicially admitted to be due by plaintiff to defendant; and that the balance remaining is $2,136.51.

Defendant, in its answer, "admits that the plaintiff took orders for the pianos and other instruments shown on the list annexed to plaintiff's petition, and further avers that had the purchasers paid to defendant the amounts representing the deferred purchase price of said instruments and had plaintiff in all other respects performed the obligations assumed by him", he would have been entitled to commissions aggregating the above stated sum of $3,594.-86. It further avers its right to be credited with various detailed amounts, respecting

items hereinafter referred to and discussed, the total of which equals the mentioned aggregate of contingently earned commissions.

At the commencement of the trial of the case on its merits, defendant filed a plea of res judicata predicated on the judgment in the former suit. On this being overruled, evidence was adduced. After completion of the trial, but before the case was submitted for adjudication, plaintiff, by formal motion, entered a remittitur for $275. The district court rendered judgment in favor of plaintiff for the sum of $1,796.85, this being the amount suggested in the prayer of the petition less the sum remitted and less the further sum of $64.66. Defendant appealed suspensively and devolutively.

■ The plea of res judicata, which is reurged here by appellant, obviously was correctly overruled. The judgment of the former suit respecting the amount claimed herein was one of nonsuit; and the right to institute this proceeding was expressly reserved to plaintiff.

It is contended by appellant in the brief of its counsel that plaintiff's claim has prescribed. We do not find that such was ever pleaded in this cause. In all events, however, the Supreme Court specifically held in the former suit that prescription has not accrued.

Properly allowed by the trial court as credits against the gross claim of $3,594.86, and concerning which there is no contest here, are the following items totaling the sum of $1,798.01, viz: judgment of former suit—paid, $491.98; collections retained by plaintiff, $64.66; credit judicially admitted under article 11 of the petition, $966.37; accounts of Emma Washington and Soloman Brown—covered by above mentioned remittitur, $275.

Some of the pianos and other instruments sold on the installment plan, for which plaintiff had contingently earned commissions, were repossessed by defendant because of nonpayment of the notes given therefor; and defendant urges that by reason of such repossessions it is entitled to be credited with the commissions charged in connection with the respective sales. The names of these purchasers, with the commissions claimed, are: A. M. Medlin, $130; Laulie Langhart, $128.20; Annette Wilson, $165.66; J. J. Donaldson, $200; Anna F. Day, $71.75; James J. Jarvis, $123.75; Creacy Field, $210; E. L. Lindbergh, $72.

■ With reference to the matter of repossession, the agency contract provided in paragraph 4 that:

"If default is made in the payment of any notes, contracts or leases, guaranteed as above, the undersigned agrees upon your demand, to repossess or cause to be repossessed, at the undersigned's expense, any instrument for which such defaulted note or notes, contracts or leases, were given in payment, and should the undersigned be unable to regain possession of such instrument, to pay you in cash the entire amount due you on same."

The Supreme Court [186 La. 356, 172 So. 419], in the former suit, referred to and construed that provision in the following language: "It is apparent from paragraph 4 of the contract that plaintiff must be given notice, or demand, made upon him by defendant, if defendant desires to repossess any pianos. Defendant cannot voluntarily repossess pianos, and charge plaintiff with commissions which he had earned from the sale of the pianos."

Defendant's counsel refers to the quoted expression of the Supreme Court as "merely obiter", and urges our disregarding of it. Irrespective of what the language should be properly termed, it applies to the identical contract and provision which we are now considering; and it is accepted by us as a correct interpretation, requiring the giving of previous notice to plaintiff on all repossessions in order to defeat his earned commissions.

■ Following the termination of the contract plaintiff authorized defendant to make all collections under the purchase agreements. This is shown by a letter which he wrote on February 15, 1930, and by testimony of defendant's employees. He testifies emphatically, however, that the requirement regarding the giving of notice to him in cases of repossession was in no manner waived, and this position does not appear to be satisfactorily refuted.

■ The instrument sold to the above mentioned A. M. Medlin was repossessed by plaintiff himself before his severing of connections with defendant, according to his own testimony. Clearly, therefore, he is not entitled to the commission of $130 claimed under that sale, and defendant should be allowed credit for it.

■ Defendant should also receive credit, we think, for the commission of $123.75 charged on the James J. Jarvis sale. This

purchaser was adjudicated a bankrupt, and possession of the involved instrument was taken by defendant after receiving a letter from the bankruptcy referee directing and authorizing· it. Notice to plaintiff respecting this repossession would have been of no benefit and was unnecessary.

The repossessions made in connection with the remaining above listed accounts occurred subsequent to the cessation of the business relationship ·of the parties and without the giving of previous notice to plaintiff as the contract required. Crediting of the commissions respecting these was properly disallowed by the district court.

Defendant in its answer asserts that the earned commissions are subject to the following additional deductions: balance due on Lelease Lyons purchase contract, $137.-05; stock interest on instruments, $205.40; value of a piano delivered by defendant to plaintiff and not accounted for, $148.75. These items are not discussed in appellant's brief, and the evidence, as we appreciate it, does not justify our holding that the trial court manifestly erred in refusing to allow credit for them.

Defendant complains, as disclosed by the brief of its counsel, that:

"Every sale involved in this suit was a credit sale. In practically every one the amount of cash received was insignificant. In every one the defendant company received not a penny from the small amount of cash that was paid when the sale was made, as in each case the cash payment was not sufficient to pay the entire commission, and the plaintiff was entitled to retain the cash payment, provided it did not exceed the commission.

"Under a scheme· such as this the plaintiff was dealing recklessly with the defendant's property, and it was small wonder that the arrangement lasted only eight months. From the history of the sales sued upon, it is obvious that the whole account was unprofitable to the defendant."

The record sustains the quoted complaint. Defendant, however, has itself to blame for the unprofitable situation that existed. Immediately following each installment sale the notes and other necessary papers pertaining to it were sent to defendant. In every instance those were received and accepted without protest, notwithstanding the protective provisions of the agency contract which read:

"All notes, contracts or leases taken for the sale of your goods shall be a ·lien on the instrument sold, notes and contracts subject to your approval and acceptance. When a sale is made, it is to be reported to you with proceeds, at once, and where a sale is not satisfactory to you the undersigned agrees upon notice from you, and at your option, either to make it satisfactory at once, to take up the instrument, or to pay for it on demand."

Summarizing, it is our opinion that the agreed contingently earned gross commissions of plaintiff should be credited as we have above set forth, or for the total sum of $2,051.76, and that plaintiff is due a balance of $1,543.10.

Accordingly, the judgment appealed from is amended by reducing its principal amount to $1,543.10, and as thus amended it is affirmed. Appellee shall pay the costs of the appeal.

TALIAFERRO, J., dissents.

### On Rehearing.

DREW, Judge.

This case is before us on rehearing. After a careful study of the case, we are convinced that the former opinion of this court is correct in most respects. Although we fail to agree with the interpretation of paragraph 4 of the contract between plaintiff and defendant as was given by the Supreme Court (186 La. 356, 172 So. 418), our interpretation cannot change the opinion of this court in regard to the pianos repossessed by defendant without plaintiff's consent or without notice to him, for certainly the contract does not waive plaintiff's right to notice and knowledge that a repossession was going to be made and it is not proved that he agreed at any time to such action by defendant. Avery v. Helwick, La.App., 166 So. 507.

In that case the court's finding is reflected in the syllabus which reads as follows:

"Where payment of salesman's commission for selling a 'freezer' was dependent on payment by buyer of installments on chattel mortgage securing price, seller was liable· for unpaid commissions where he accepted return of freezer and canceled mortgage on buyer's inability to continue payments without knowledge of salesman."

However, we are convinced that defendant is entitled to more credits than we

allowed in our former judgment, viz., $205.40, stock interest on pianos returned by plaintiff as provided by the contract. Mr. Armstrong testified that he and plaintiff figured this amount and it was agreed upon between them. There is no denial by the plaintiff in his testimony.

There is another item for which credit should be allowed, that is, one Winton piano, No. 203,500, delivered by defendant to plaintiff and not returned or accounted for, the value of which was $148.75. The two items total $354.15 and defendant is entitled to this additional credit.

It therefore follows that the former judgment of this court is amended by reducing the amount of the award to plaintiff from $1,543.10 to $1,188.95, and as amended, it is reinstated and made the judgment of this court.